# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LMCHH PCP LLC<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 17-10201-LSS |
| In re:<br><br>LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 17-10202-LSS<br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD** |

**MOTION OF MCKESSON TECHNOLOGIES INC. TO TRANSFER VENUE OF AFFILIATED CHAPTER 11 BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

By this Motion, McKesson Technologies Inc. ("MTI"), on behalf of itself and its corporate affiliates (collectively, "McKesson"), seeks the entry of an order transferring venue the two affiliated bankruptcy cases for the "Louisiana Medical Center and Heart Hospital"[1] to the United States Bankruptcy Court for the Eastern District of Louisiana (the "Louisiana Court").

## I.   INTRODUCTION

1.   The Debtors own and operate a 132-bed acute-care hospital (the "Hospital") located in St. Tammany Parish in Lacombe, Louisiana.  The Hospital specializes in treatment of cardiovascular disease and injuries affecting the spine.  In addition to cardiovascular and spine care, the Debtors offer a full range of inpatient and outpatient medical, surgical, and diagnostic

---

[1] The "Debtors" are Louisiana Medical Center and Heart Hospital, LLC and its parent corporation LMCHH PCP, LLC. The Debtors have yet to file their bankruptcy schedules or statements of financial affairs.  The initial meetings of creditors are set for February 28, 2017.

services covering more than 35 specialties including orthopedics, vascular and general surgery, urology, gastroenterology, and neurology.  *See* Declaration of Neil F. Luria, Chief Restructuring Officer in Support of Chapter 11 Petitions and First Day Motions ("Luria Declaration") [Docket No. 9], ¶¶ 6, 35; Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases ("Joint Administration Motion") [Docket No. 2], ¶ 2.

2. In response to a liquidity crisis, the Debtors decided to file bankruptcy to effectuate the wind down and closure of the hospital over a one-month period and the liquidation (through a potential sale) of the Hospital and its associated assets.  As the Debtors explain: "[They] seek protection under the Bankruptcy Code … to conduct an orderly wind down of the Hospital that both preserves the quality of patient care during its continued operations and complies with applicable federal, state, and local regulations."  *See* Debtors' Motion for the Entry of an Order Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Enter into Postpetition Agreements Outside of the Ordinary Course of Business, [Docket No. 7], ¶ 5.

3. McKesson licenses core intellectual property products and provides intellectual property technology services to the Debtors.  These products and services are central to the day-to-day operations of the Hospital.  Without McKesson's intellectual property and services, the Debtors could not operate.  McKesson's intellectual property products and services enable the Debtors to maintain electronic healthcare records ("EHR") for their patients.  According the Debtor's initial bankruptcy filings, McKesson is the largest unsecured creditor, with a listed claim of $614,360.18

4. This Court should transfer venue to the Louisiana Court because it is in the best interests of patients and the other stakeholders to have the local bankruptcy court handle the

wind down, closure and potential sale/liquidation of this single hospital located in Lacombe, Louisiana.  In single-location hospital and healthcare bankruptcy cases, the local bankruptcy court always is the best venue to oversee the myriad of issues that arise in these types of healthcare bankruptcy cases.

5. Other than the state of incorporation for the Debtors' parent corporation, the Debtors have no connection to Delaware.  They have no assets or employees in Delaware.  Rather, all of the Debtors' assets and current employees and physicians are located in or near Lacombe, Louisiana.   No creditors are located in Delaware.  All of the Debtors' records, including patient records, are located in Lacombe, Louisiana—which is in the Eastern District of Louisiana.

6. As set forth herein, overwhelming cause exists to transfer venue of the Debtors' bankruptcy cases to the Louisiana Court.  The interests of creditors, employees and other interested parties are best served by having this hospital bankruptcy case administered by the Louisiana Court.  That is where the Debtors' business operated and the Hospital assets are located.  The Eastern District of Louisiana is where the Debtors' employees and other stakeholders (i.e., patients, physicians, etc.) are located.  As an operating hospital located in Louisiana, the Debtors are subject to strict licensure and oversight by multiple agencies of the State of Louisiana, including the Louisiana Department of Health and Hospitals, the Louisiana Board of Pharmacy, and the Louisiana Department of Environmental Quality.

7. All of these reasons, and many more, support transferring venue of these just-filed Chapter 11 cases.

**II.    VENUE TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA IS WARRANTED**

8. Under 28 U.S.C. §§ 1404, 1408 and 1412, and under Bankruptcy Rule 1014, a bankruptcy court may transfer venue of a bankruptcy case in "the interest of justice or for the convenience of the parties."  28 U.S.C. §§ 1404, 1408 and 1412; Fed. R. Bankr. 1014;

9. In determining whether a venue transfer would serve the convenience of the parties, courts generally examine the following six factors:

   i)    the proximity of creditors of every kind to the court;

   ii)   the proximity of the debtor to the court;

   iii)  the proximity of the witnesses necessary to the administration of the estate;

   iv)   the location of the assets;

   v)    the economic administration of the estate; and

   vi)   the necessity for ancillary administration if liquidation should result.

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.* (*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002); *In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at *19 (Bankr. D. Del. Feb. 2, 2015).  Under this analysis, "the factor given the most weight is the promotion of the economic and efficient administration of the estate."  *Enron*, 274 B.R. at 343.

10. In addition, a number of courts have included as an additional consideration or factor, "a state's interest in having local controversies decided within its borders."  *In re Standard Tank Cleaning Corp.*, 133 B.R. at 567 (citing *Portjeff Development*, 118 B.R. 184, 193 (Bankr. E.D.N.Y. 1990); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988); *McLemore v. Thomasson* (*In re Thomasson*), 60 B.R. 629, 632 (Bankr. M.D. Tenn. 1986); *In re Boca Raton Sanctuary Assoc.*, 105 B.R. 273, 275 (Bankr. E.D. Pa. 1989)).

11. In Chapter 11 cases, courts generally grant substantial deference to a debtor's choice of forum. *See e.g.*, *Enron*, 274 B.R. at 342. That same deference should not, and generally does not, apply to single-location hospital/healthcare debtors.

12. Because of the unique nature of hospital and other healthcare bankruptcy cases and prevailing concern for patient safety and the Bankruptcy Courts' role in supervising these types of healthcare cases, the Code and Congress expect close monitoring by the bankruptcy court. For this reason, bankruptcy courts throughout the country quickly (and sometimes *sua sponte*) transfer venue of healthcare cases to the Federal district in which the debtor's healthcare facility is located. This has been the longstanding practice in Delaware.

13. In Delaware, the leading example of this approach is the 2008 bankruptcy case of Hawaii Medical Center (HMC). HMC operated several hospitals in Hawaii. On August 29, 2008, HMC filed Chapter 11 in Delaware. Six days later (on September 5, 2008), a creditor filed a venue change motion. Several other creditors joined. Three weeks later, on September 19, 2008, Judge Walsh transferred venue to Hawaii. *See In re CHA Hawaii, LLC*, *et al*., Lead Case No. 08-12027-PJW, Docket Nos. 46, 104.

14. Another example to this approach is the June 2016 bankruptcy filing of nine Arkansas nursing homes. *In re Highlands of Arkansas, et al*., Lead Case No. 16-11330-LSS. June 2016, this Court transferred venue of these nine nursing homes to the Eastern District of Arkansas. *See In re Highlands of Arkansas*, *et al*., Lead Case No. 16-11330-LSS, Docket No. 49; *see also*, *In re New England Dental Centers, Inc*., Case No. 98-347 (PJW), letter op. (Bankr. D. Del. Mar. 20, 1998) (attached as Exhibit B); *In re Ernst Home Ctr., Inc*., Lead Case No. 96-1088, bench ruling Tr. at 2-3 (Bankr. D. Del Mar 8, 1996) (attached hereto as Exhibit C).

15. There are sound reasons for this approach. The health and safety of the patients may be jeopardized by the 5-8 hour travel time between Louisiana and Delaware and the nearly 1200 miles that separate the Hospital from this Court. Healthcare bankruptcy cases, such as these cases, require the appointment of a healthcare ombudsman to monitor the quality of patient care and provide regular comprehensive reports to the Court. 11 U.S.C. § 333. The ombudsman must be on site; must visit the Hospital often in order to perform her job and must be familiar with the state regulatory scheme that governs the Hospital. If problems arise, the ombudsman must make immediate contact with the Court and advise the Court as to all serious health and safety problems. An ombudsman with a 5-8 hour travel time to the Court will be unable to ensure patient safety and fulfill her statutory duties. In addition, the Louisiana regulatory agencies, including the Louisiana Department of Health and Hospitals, will be similarly disadvantaged in their oversight roles.

16. If an emergency were to arise at the Hospital, it would be 5-8 hours to arrive in Delaware. The Louisiana Court has two judges who reside locally and could be found quickly in an emergency.

17. As with all states, Louisiana has a detailed statutory and regulatory scheme that governs hospitals. *See* La. Adm. Code, § 9301, *et seq*. Included within that scheme is a statute governing hospital closures. La. Adm. Code, Title 48, § 9307. That statute provides:

> A. A cessation of business is deemed to be effective with the date on which the hospital stopped providing services to the community.
>
> 1. The hospital must notify the department in writing 30 days prior to the effective date of closure.
>
> 2. The hospital shall submit a written plan for the disposition of patient medical records for approval by the department. The plan shall include the following:

        a. provisions that comply with state laws on storage, maintenance, access and confidentiality of the closed hospital's patient medical records;

        b. an appointed custodian who shall provide physical and environmental security that protects the records against fire, water, intrusion, unauthorized access, loss and destruction;

        c. public notice on access in the newspaper, with the largest circulation, in close proximity of the closing hospital, at least 15 days before the effective date of closure;

        d. the effective date of closure.

        3. The hospital must return the original license to the department.

Clearly, the State of Louisiana and its regulatory agencies have a large role in these cases.

    18.    Counsel was unable to locate a reported bankruptcy case discussing a change of venue motion for a healthcare debtor, such as hospital. This may be because responsible hospital operators who must file bankruptcy do so near in the Federal district in which healthcare entity/hospital is located rather than nearly 1200 miles away.

    19.    In addition to these reasons for transferring venue, the traditional factors used in evaluating a venue transfer motion all support transferring venue.

    20.    *Asset Location*. Here, the Debtors' operating assets are the Hospital and the property associated with running the Hospital. Those assets are located entirely within Louisiana. All of the Debtors' books and patient records are located in Louisiana. In contrast, the Debtors have no assets in Delaware. This factor supports granting the venue transfer motion.

    21.    *Creditor Location*. A review of the Debtors' creditor lists reveals that a majority of creditors are located in Louisiana.[2] As part of their first day filings, the Debtors filed a motion

---

[2] Based on a quick review of the creditor matrices [Docket No. 23], it appears around 50% the Debtors' creditors are located in Louisiana.

to reject the employment contracts and enter into new contracts with around 75 physicians. Those physicians are located in Louisiana. The concentration of creditors within Louisiana makes sense. The Debtors operate a hospital in Louisiana. The vast majority of Debtors' employees, creditors and other stakeholders are located in or have significant business operations in Louisiana. This factor strongly supports transferring venue to Louisiana.

22. *Proximity of the Witnesses*. This factor strongly supports transferring venue to Louisiana. All of the Debtors' employees and day-to-day management are located in Louisiana. None are located in Delaware.

23. *Proximity to Court*. Geographically, Lacombe, Louisiana is nearly than 1,200 miles from Wilmington, Delaware. This factor weighs heavily in favor of venue transfer.

24. *Economic Administration of Estate*. This factor again weighs heavily in favor of venue transfer. It makes no economic sense to have a Delaware court administer and oversee the wind down, closure and liquidation of a Lacombe, Louisiana hospital and its assets. Most of the creditors and other interested parties will save on legal fees and travel costs by transferring the cases to Louisiana. The Debtors will also benefit from transferring these cases to Louisiana as their travel costs to and from Delaware would be eliminated. Additionally, many of the Debtors' employees and physicians may be required to participate in these cases (particularly in light of two first day motions filed by the Debtors). They work and reside in Louisiana. In addition, a transfer of these cases back to Louisiana will reduce travel expenses for witnesses such as healthcare consultants, patient and doctor representatives, the healthcare ombudsman, Louisiana regulatory officials and the other parties may be required to testify as to the Debtors' operations and otherwise participate in these cases.

25. Based on all of this, there is no legitimate dispute that the costs of the Chapter 11 process, which at best are a substantial drain on creditors' ultimate recoveries, will be materially increased by the lengthy travel time and inconvenience resulting from conducting these Chapter 11 cases over a thousand miles away from where the Hospital is located and the Debtors operate their business. It is simply not economical to conduct Chapter 11 cases in an inconvenient forum such as the District of Delaware when the Debtors' Hospital is in the Eastern District of Louisiana.

26. *Ancillary administration if liquidation should result.* In this case, the Debtors are liquidating. This factor supports transferring venue. By way illustration, since the Debtors own the real estate on which the Hospital is located and that real estate is located in Lacombe, Louisiana, Louisiana law will control any sale of the underlying real estate. A Louisiana bankruptcy court can and should oversee any auction and sale for the Hospital. Likewise, a Louisiana bankruptcy court is best suited to address the real estate and myriad of other issues, all governed by Louisiana law, that undoubtedly will rise in connection with the wind down and sale of the Hospital.

27. *Interests of the State of Louisiana.* As of the filing of this motion, the Debtors still possess their operating licenses issued by the State of Louisiana. As a result, the Debtors are subject to stringent regulations by the State of Louisiana. This factor strongly supports venue transfer to Louisiana.

28. Taken together, all of these factors overwhelmingly support transferring venue to the Louisiana Court.

29. Case law supports this outcome. *In Rehoboth Hospitality*, No. 11-12798, 2011 WL 5024267 (Bankr. D. Del. Oct. 19, 2011), Bankruptcy Judge Gross observed:

> Courts in this Circuit … have held that the estate of a real estate partnership is most efficiently administered in the district where the principal asset is located. In the context of what is essentially a single asset case, the location of the lone improved real estate asset is of particular concern to the Court, especially in the event of a potential liquidation, and the case is better administered by a court in the district in which it is located.

2011 W.L. 5024267 at *5 (citations and quotation marks omitted).

30. Judge Gross's observations about real estate bankruptcy cases are equally, if not more applicably, here. These debtors own and operate a Louisiana hospital. The Hospital is now closing and liquidating through Chapter 11. Reorganizations or liquidations of these types of single state/single location healthcare debtors should take place in the district in which the majority of assets, creditors, regulatory bodies, and other stakeholders (i.e., patients) are located. Here, that is Louisiana Court.

### III. NOTICE

Notice of this Motion is being given to: (a) the Debtors; (b) the Office of the United States Trustee for the District of Delaware; (c) Center for Medicare and Medicaid Services; (d) Louisiana Department of Health, Legal Services, (e) Louisiana Department of Health and Hospitals; (f) the United States Attorney for the District of Delaware; and (g) any party who has requested notice. In light of the nature of the relief requested herein, McKesson respectfully submit that no further notice of this motion is necessary.

### IV. CONCLUSION

Venue of the ten Debtors' bankruptcy cases should be transferred to the Louisiana Court for the convenience of the parties and in the interest of justice. Each factor used to consider whether to transfer venue either weighs in favor of transfer of venue to the Louisiana Court. No factor weighs in favor of maintaining venue in Delaware. For the foregoing reasons, McKesson

respectfully requests that the Court enter an order transferring venue of these Chapter 11 Cases to the United States Bankruptcy Court for the Eastern District of Louisiana.

Dated:  February 2, 2017                    THE POWELL FIRM, LLC

                                                           By:   /s/ *Jason C. Powell*
Jason C. Powell, Esquire (No. 3768)
1201 N. Orange Street, Suite 500
P.O. Box 289
Wilmington, DE 19899
302-650-1572
302-650-1574 (fax)
jpowell@delawarefirm.com

and

BUCHALTER, A Professional Corporation
Jeffrey K. Garfinkle (Cal. Bar No. 153496;
*pro hac vice* application pending)
18400 Von Karman Avenue, Suite 800
Irvine, California  92612
Telephone: (949) 760-1121
Facsimile:  (949) 720-0182

Attorneys for McKesson Technologies Inc.